Final matter today, number 25-1368, Massachusetts Fair Housing Center et al. v. Dep't of Housing and Urban Development et al. At this time, would counsel for the appellants please introduce themselves on the record and begin Good morning, your honors, and may it please the court. My name is Lila Miller and I represent the plaintiff's appellants. With the court's permission, I'd like to reserve six minutes of my time for rebuttal. Counsel, usually we do about three to four minutes, so how about four? Perfect, thank you, your honor. Okay, you're welcome. I'll touch briefly on the statutory context and then quickly make my way to the jurisdictional issue on appeal. In amending the Fair Housing Act to include the Fair Housing Initiatives Program, Congress mandated that HUD make certain categories of grants any time funds are appropriated, prescribed who may receive the awards, and detailed the precise activities that recipients may undertake. This granular and robust funding scheme has been the backbone of Fair Housing Act enforcement for more than three decades. FIP awards not only dictate the bulk of recipients' day-to-day operations, but also provide the bulk of their budgets. Plaintiffs challenge HUD's unlawful and abrupt termination of their FIP awards on February 27. The district court determined that it lacked jurisdiction, and plaintiffs asked this court to reverse that error. Plaintiffs properly challenged HUD's grant termination under the Administrative Procedure Act in federal district court. There are two aspects of plaintiffs' claims that are particularly relevant to this jurisdictional analysis. First, it is undisputed that HUD promised payment for work already performed as of the termination date. Plaintiffs' claims are therefore about prospective relief. Second, plaintiffs' claims do not depend on the contents of their grant agreements and thus are not contract claims. I'll unpack each of these a bit more, starting with the prospective nature of relief. Plaintiffs seek to set aside HUD's February 27 termination decision, which would reset their relationship moving forward. It is undisputed that prospective, equitable relief of this sort is not available from the Court of Federal Claims. The Supreme Court acknowledged that in Bowen, this Court reaffirmed it the other week in American Public Health Association, and the government's briefing concedes it. This is important because HUD's argument rests on the applicability of the Section 702 carve-out for when another statute expressly or impliedly forbids the relief sought. Because everyone agrees that the relief sought here is not available from the Court of Federal Claims under the Tucker Act, Section 702's carve-out should not apply. By contrast, the relief sought is within the plain language of the APA, which defines relief to include the whole or part of an agency grant of money or assistance. The text of the APA is clear, but we can also look to the legislative history behind it, where the congressional report said that it was designed to eliminate the sovereign immunity defense for all equitable actions for specific relief against a federal agency. Counsel, if I can just ask you for a second. I appreciate the points you've made that you're seeking only prospective relief and that it's not necessary to look at the substance of the grants to assess your claims. But one of the things that was at issue in the NIH case was an agency-wide policy, and that's often what a person is targeting in an APA action as an agency-wide policy. But here I just want to make sure that there is no agency-wide policy, right? It's just a series of individual grant terminations. Is that correct? We've pushed back on that a little bit, Your Honor, because in the Amon Declaration, what HUD said is that it was implementing a policy of terminating any grant that contained certain terms. But you told us we shouldn't consider the Amon Declaration, correct? That's right, Your Honor. So it is grant terminations. It is not sort of a programmatic pause as to FIP in general. So if we're sort of looking at grant termination by grant termination and we're trying to figure out, which is our obligation, which Supreme Court case is most directly on point, why wouldn't it be California versus Bowen? Because Bowen was much more about a general decision that certain types of services would no longer be covered under Medicaid. So why are you closer to Bowen than California? Sure. Two reasons. The first is that when looking at how to resolve plaintiff's claim here, which is whether the February 27th termination was arbitrary and capricious and contrary to law, the main thing to look at to resolve that claim is the termination letter itself. The second, this court adopted the megapulse analysis or the megapulse test in the California case. And that says even if you have to refer to a contract in part, that does not transform the nature of a claim into a contract claim. And a third reason, Your Honor, is that in California, the APA claim was tethered to the terms and conditions of the award. It was woven throughout the complaint. It was in the cause of action itself. And it was not only in the Department of Education's framing of the case, but it was also in the plaintiff's response to the Department of Education's argument. So in that case, they were very explicitly arguing about the terms and conditions and whether the terminations were permitted. That is not the case here with plaintiff's claims. But the power to terminate is a regulation that's then by reference included in the contract, right? The regulation at issue is referenced in the contract, but that I think is not dispositive for two reasons. First, under the megapulse test, that does not transform this into a contract claim. And I think that's evidenced by the party's arguments and the likelihood of the merit sections of the briefing. There, both sides were not arguing about the grant agreement's terms and conditions. They were not arguing about the incorporation of that term and what it meant. They were applying APA case law and APA theories, not contract theories. And the second is sort of merely mentioning that provision in a grant agreement also I don't think would sort of necessarily transform any claim into a contract claim. It would be the same as saying a grant agreement says the agency will abide by the Equal Protection Clause and then trying to say that Equal Protection Clause claims are therefore contract claims because it's mentioned in the terms and conditions. Eventually, I'd like to go backwards a little bit and just talk about the appealability of the dissolution of the TRO. I mean, can you talk to me a little bit about jurisdiction and mootness and what authority we have to actually act on this appeal? Yes, Your Honor. I'll start with appealability under 1292, and then I can move to the government's mootness arguments. The appealability under 1292, the test that the Supreme Court has laid out and that this circuit has adopted, looks at three prongs. Whether the order at issue has the practical effect of refusing an injunction, whether it will have serious, perhaps irreparable consequences, and whether it can be effectively challenged only by immediate appeal. Both parties agree that this test has been satisfied in this case. The practical effect of the dissolution order is of refusing an injunction because the district court's unambiguous language is that the proper forum for this case, in terms of jurisdiction, is the Court of Federal Claims. In your view, it's essentially sort of a final judgment on that issue, I think is how I understood your brief, right? This is not the right forum, and therefore no injunctive relief or other forms of relief would be available to you. Is that essentially your position? That's exactly right, Your Honor, and that's partially what the government asked in its motion to dissolve. Okay, but why not then ask the court for either a final judgment or even an order on a PI, just transform, ask the district court, can you please just transform your order on the TRO into an order on a preliminary injunction so that we can appeal? Three things, Your Honor. The first is, at the time, there were sort of irreparable consequences that plaintiffs feared, and so there was a need to move as quickly as possible. The second is that when plaintiffs— I write from the letter that those don't exist right now. That's correct, Your Honor. At this moment, plaintiffs would not argue that there are imminent irreparable consequences. The second is when plaintiffs presented their understanding of the dissolution order to the district court in their motion to stay, and it was expressed, we understand this to resolve jurisdiction, and that would resolve preliminary injunction entitlement if not the case entirely, the district court did not say, oh, that's not what I meant. It said, yeah, I'll stay the case so that you can appeal. And the third thing is that— Do you agree with me that that's not how jurisdiction works? I mean, the first circuit can't just take cases because the district court and the parties agree that they want the first circuit to take the case. I agree, Your Honor. As a district court judge, I would love that. I agree, Your Honor, but I think that's where the test laid out in Carson becomes relevant again, which is the Supreme Court has told us what the factors are to look at, and they're met here. So the practical effect of refusing an injunction, plaintiffs argue that's met because it was—jurisdiction is a threshold matter. Every time a TRO is denied because a district court says, well, I think your argument for merits is not right, that's now an appealable TRO? No, Your Honor. I think that's why it's important here that this was a jurisdictional determination that would affect plaintiffs' ability to proceed in the forum at all. That's not going to be the case if a district court says, I don't think you're likely to succeed on the merits. I was just going to say, in other words, what you're saying is sometimes you don't get a TRO or even a PI at a certain point in time because you haven't put forth enough evidence, and the plaintiff can always go forward and ask for another TRO or another PI with additional evidence, but the jurisdictional ruling here made that completely unavailable to you. Exactly, Your Honor. So if there's a preliminary ruling on the jurisdictional basis or statute of limitations or something that might foreclose relief entirely, then do you think that would be appealable even though it's at the TRO stage of a case? For jurisdiction specifically, if it's jurisdiction as to the claims entirely and the other prongs of the Carson test are met and we argue that they are here, then yes, we think it would be an appealable order. The second prong is what is the… Serious, perhaps irreparable consequences. Which now doesn't exist. Not quite, Your Honor. There's a distinction between serious, perhaps irreparable consequences as the Supreme Court articulated in Carson and imminent irreparable harm as we understand it for purposes of preliminary relief. So in Carson, for example, the parties jointly moved to have the district court enter a consent decree to resolve a Rule 23b2 discrimination class action. And the Supreme Court evaluated the potential consequences and said it might turn out that the denial of that consent order would prevent the parties from resolving the case on their negotiated terms and it might turn out that plaintiffs are unable to get the relief they want. And both of those eventualities were based at the Supreme Court's assessment of the conclusion of the case. Maybe this is a different question, but I guess what seems troubling to me, I understand your jurisdictional argument, well, when the judge kind of says at this really early stage, I think this case isn't going forward and we're just going to run off to the Court of Appeals. I mean, you have to acknowledge in the time, the law, I don't know if it's dispositive, but has moved in your favor. You have an argument in light of a case that just came out from this court that you did not have when you did this. And so it's no longer so clear to me that what Judge Stearns, I think, said is right. Maybe it is, maybe it isn't. You have good arguments to make. And so by rushing to get here without turning all the square corners, now we're going to make that decision and I don't know that that's best. This court has broad discretion to enter appropriate relief. So it may be that this court vacates the jurisdictional analysis and remands for further proceedings as opposed to resolving the jurisdictional question itself. I guess what you're saying in a sense is what Judge Aframe has said is always possible. In other words, even when you get a final judgment, there might be a decision that comes out from this court during the appellate process that changes the arguments that the parties can put forward to us. So that's kind of a normal situation that can arise in an appeal. Is that essentially what you would be saying? Yes, Your Honor. But yet you've taken extraordinary steps to get this here. Do you agree the normal rule is TROs are not appealable? In the ordinary course, yes. The reason is it's too early, it's too preliminary, and yet you needed to get it here really early even though there were steps you could have taken. And your reasoning is because at the moment we thought, well, I mean, if he made a very bad merits argument, I guess I don't understand why it matters whether it's jurisdictional or merits. Like, we're going to lose. Whatever. We're going to go to the PI and it's not going to work out for us because he's previewed what he's going to do, what he believes about the case. I don't understand really the difference between jurisdiction and any other argument that's case dispositive. A couple of things, Your Honor. The first is that the jurisdictional nature of this ruling means that we wouldn't have even had the option to keep making those arguments. If we were to have been found not likely to succeed on the merits on a TRO, at any point in the litigation, once we felt the record was further developed, we could have moved to reopen or renew our request for either a TRO or a preliminary injunction. The second thing is that what the district court did here actually goes further than what the Supreme Court did in California. It says at the conclusion of the dissolution order that it lacks jurisdiction and the proper form for this case is a court of federal claims. In California, what the Supreme Court said is that the government had made a strong showing that the district court lacked jurisdiction and it remanded for further proceedings. The dissolution order here actually had more extreme consequences for plaintiff's claims than what happened in California. Counsel, can I ask you, because I know we're running out of time, to follow up on your July 15th 28J letter. Your clients have actually had their grants continue to be administered in the last few months from what I understand. And your view is that this, even if you statutorily could have bought this case to us and appellate jurisdiction is available under the statute, you're saying the case isn't moved because of the voluntary cessation doctrine, is that right? That's correct, Your Honor. We've since heard back from the Department of Justice and they have said that they are still in the process of considering next steps. So although we inquired whether they were committing not to enforce the February 27th termination letter, they did not take that opportunity. And even if they were to change their position here during argument, it would not be adequate under the voluntary cessation doctrine because there has to be no reasonable chance that the conduct would resume. And what about the first prong of the doctrine, which is that the cessation or the change in conduct has to be related to the litigation, I believe is the first prong. Are we certain that this was related to the litigation? We would argue that it was related to the fact that the plaintiffs immediately appealed and we were awaiting resolution from this court. Thank you. Thank you, counsel. At this time, would counsel for the Department of Housing and Urban Development please introduce himself on the record. Good morning, Your Honors, and may it please the court. Brian Springer on behalf of the federal government. I just want to take a step back and make sure that the mootness issue is not getting lost in the shovel here because I think it wasn't discussed on the other side. I just want to make clear that what plaintiffs are seeking to challenge is the dissolution of a temporary restraining order that by law could not have remained in effect beyond May 16th. We're now more than two months beyond that date, and plaintiffs' appeal is moot. A ruling at this point about whether the district court correctly dissolved the TRO would be purely advisory because it would not provide plaintiffs any practical relief. I understood from plaintiffs' brief that what they point to is There's a practical way to read the TRO. We went to May 16th because we needed time for briefing, and everybody agreed to that, and then I think it's 32 days before May 16th the judge dissolves it. So could we give the relief of putting us back to the previous status quo, which is there's 32 more days of status quo to brief the PI and go back before the judge? Couldn't we give that relief? Your Honor, I don't think that this court can give that relief based on the plain text of Rule 65, which says that a TRO normally will last for 14 days, and then the district court has two options to extend it. One is the district court can extend it for another 14 days if it finds good cause, or it can extend it based on consent of the other party. And here the government's consent was only to have the TRO last through May 16th, specifically to allow for PI briefing, and plaintiffs were the ones who decided not to proceed with PI briefing. They went to the district court, and they asked the district court to stay proceedings. They could have continued with their PI briefing, and then if the district court denied a preliminary injunction, at that point they could have appealed to this court without having this lingering mootness issue. Why does that deprive this court the ability to remand and grant the relief that the TRO is in effect for the remaining days to provide for briefing? I don't understand why that's still not possible. Your Honor, I just don't think that that fits with what Rule 65 says. What Rule 65 says is it's either a total of 28 days or the extent of what the other party consents to, and here the government consented to having the TRO through May 16th and no further. So now that we're beyond May 16th, there's no power to put the TRO back in place. And again, the whole point of this, of deciding what to do, was to determine what the state of affairs should be through May 16th so that the parties could brief a preliminary injunction. Regardless of whether the district court was right or wrong to have a TRO in place for that period, the whole point of this was just to allow the preliminary injunction briefing to go forward, and plaintiffs decided to abandon that and to take this appeal. On this appeal, they didn't seek emergency relief. They didn't try to take any. They did ask for expedition, but I think there's sort of two separate questions. There's the question of whether you can appeal a TRO up to the date where it expires and then what to do with the appeal once you get past that date. And here I don't think plaintiffs are able to continue to maintain the appeal now that we're past the maximum extent of what this TRO would have been. Counsel, I think I understood the plaintiff's argument for why the case has not moved a little bit differently than what you've been presenting to us, and I understand your arguments that it was about to expire and there are very substantial limitations on how long TROs can last. But I understood the plaintiffs to be saying that we have to look at the practical effect of the order here, and the practical effect of the order here was the denial of any preliminary relief, and I think that was, they made that argument partially in response to what the government had argued to the district court. And so when I looked at the briefing before the district court, the government did say, and I think this is Appendix 693, that the district court should not, and I'm quoting, order any further preliminary relief considering the Supreme Court has indicated that plaintiffs are not likely to succeed on the merits, end quote, because of jurisdictional issues. So given that that was your position to the district court, that no further preliminary relief, whether TRO or PI, would be appropriate because there was no jurisdiction, the plaintiffs are saying this was just a denial of an injunction, full stop. Why is that wrong? Why is that not a fair way to look at the practical effect of the order, which we're supposed to do? Sure, I mean, I guess I don't see that in the district court's, you know, again, this is just a minute order that's sort of written on the docket, but I don't see that, at least specifically, in the district court's order. The district court is talking about what to do with the TRO and whether to keep the TRO in place or to dissolve it. The district court did not simultaneously vacate what was still in place, the briefing schedule, as to the preliminary injunction, and I don't see any reason. What about at the very end of the order, counsel? I'm sorry, I don't have it in front of me, but I believe at the very end of the electronic order, the district court says something like, this is not the correct form for this case, forum meaning, you know, place, jurisdictional place. This is not the correct form for this case. That seems pretty conclusive and in line with what you had argued. The district court accepted your arguments, essentially. I have a couple points on that. I mean, I think, first of all, if you look earlier in the order, the district court is talking about the likelihood of success. I mean, it says if it's not likely that I'm going to have jurisdiction, then, you know, the TRO should be dissolved. And, again, this is all in the context of determining whether or not the TRO should stay in place or not, again, through May 16th. But I also would just like to disaggregate, you know, I think what plaintiffs are focusing on is the reasoning of the district court, and it may well be that the district court, in considering a future motion for a preliminary injunction or considering whether to dismiss the case, would follow this same course. But unless and until the district court actually says, I'm denying a preliminary injunction or I'm dismissing this case, which, again, plaintiffs could have asked the district court to do, you know, once we got beyond the maximum duration of the TRO. What does practical effect mean? I mean, we wouldn't need to look at the practical effect of something if it explicitly said the thing that the plaintiffs are arguing, right? The whole point of a practical effect analysis is to say, well, the words may not be there, but let's look at the impact. What does it actually do, the order that the district court has put into place? So if we're looking at practical effect and putting, you know, again, some of the words, just for a moment, to the side, what practically it seems that what the district court has said, because it agreed with your briefing, was that it would not be ordering any further preliminary relief. Again, why is that an unreasonable reading of the order? So, Your Honor, I think the words practical effect go to the question of whether the order we're talking about is appealable. If we're asking the question of whether the judgment itself has, you know, any continuing effect itself or whether there's collateral consequences, I think, again, the right place, you know, the division here is between whether reversing this judgment, which, again, the judgment that's under review is about the TRO and whether the TRO was properly dissolved. I think reversing or vacating that would have no effect because the TRO can't be put back in place anymore. We're beyond the maximum duration of where it is. And even if the district court's reasoning might, you know, sort of predominate or even potentially have effects down the road as to what the district judge thinks is the right disposition of this case, you know, plaintiffs should go to the district court and either ask, you know, for a preliminary injunction or for a final decision where the district court... I mean, again, especially in light of the fact that there have been changes in the law in the meantime, the district court could be given an opportunity to actually look at, you know, what has changed, especially because, you know, the Supreme Court is likely to give guidance in sort of the parallel American Public Health Association case, and that would be something that could bear on the district court's resolution either of a forthcoming preliminary injunction motion or a motion to dismiss or, you know, any other proceedings. So talking about the effect of the lower court's order, if this court were to agree with you that this case is moot and the plaintiffs were then to ask for a preliminary injunction, would your clients argue that the law of the case is that for jurisdictional purposes the proper form for this case is the Court of Federal Claims? Because if so, then this isn't moot. Your Honor, I mean, I don't want to sort of get out ahead of what the arguments would be. I mean, I don't foresee us making an argument to that effect if the idea was that there was sort of a very preliminary quick decision on the TRO and then the motion to dissolve the TRO, and then we could have more full briefing on what the correct answer is in the context of a, you know, fulsome... There is new law that affects how this might shake out, right? That's correct, Your Honor, and we also expect to get a ruling from the Supreme Court, you know, very soon in this parallel case that presents, you know, an extremely similar situation to what we have here. If not, this court already has new law. That's correct, Your Honor. I don't know how it cashes out, but it's relevant. So Judge Stearns would not be... Even under law of the case, he can change his mind in the middle of a case based on developments, right? That's correct, Your Honor. And the district court, you know, would have the opportunity in the first instance to look at all that if plaintiffs were to move for a... You know, if this court were to dismiss this appeal for... as moot and then allow the district court to consider proceedings going forward. Can I ask you about a different mootness argument? And that's... I think the government did not respond to the July 15th 28J letter from plaintiffs. Do you view the case as moot based on the fact that the grant seemed to be administered by your client, at least for now? Your Honor, we haven't argued that the case is moot on that basis. At present, the agency is, you know, is continuing to administer these grants, but it's still in the process of considering what to do and to make future decisions. That's not an argument that you're making. You're relying on the other mootness argument you presented in your briefs. That's correct, Your Honor. Can I then move you to the merits of the jurisdictional issue? As you heard your opposing counsel say, in their view, this case is quite different from the California case because they are asking only for prospective relief. The termination letters made clear that actually they could submit for sums that they were owed for past performance on the grant. So this is just about going forward. It's about an ongoing relationship between the grantees and the department, which is another factor that Bowen looked at. So can you talk to us about why, you know, sort of the big question, why isn't this more like Bowen than California? So, yeah, Your Honor. I mean, I'm happy to sort of walk through it. I mean, I think, first of all, just to correct one small thing, the California case itself had an aspect to it that was forward-looking. The Supreme Court, right at the beginning of the decision, says that the order under review, you know, was kind of canceling the terminations of grants and that that both pertained to past payments and the continued payments going forward as they accrue. So California had that element to it as well, the perspective element. But this case has no past-due element, correct? I just want to make sure I'm understanding correctly. Your Honor, I guess I'm not sure that that's true. If the contracts were put back into place, which, you know, is what the TRL ordered, it would be materially the same as the position we were in in California because there, you know, even if the agency sort of would have independently paid out some past-due things, by putting the contract back in place, there's both the things that have already been accrued and then the future accruals going forward. So I guess I just don't see that as an actual distinction. Let me just ask you a factual question because I'm not sure I'm following. Right now, let's put aside that the grants are continuing to be administered. At the time this lawsuit was filed, the grants were terminated. And the termination letter said you can go ahead and submit your receipt for past-due, you know, sums owed for past performance under the grants. So I don't think that, that's dependent on the grants being reinstated. In other words, they could ask for past-due money owed regardless of whether the grants were reinstated. So that's why I'm not quite following your argument. Can you respond? Yeah, I mean, I think that's correct. That is what the agency said in its termination letter is please feel free to, you know, send us things. I mean, you could imagine there could be disputes between the agency and plaintiffs about what counts and what doesn't count. And by putting the contract, I mean... There was a process for those disputes, I think, to be specified in the termination letter, right? That's correct, Your Honor. There is a process. Reinstating the grant terminations would not have impacted all of the steps that were laid out in the termination letters, would it? Yeah, I mean, and I think sort of to return to the broader point, you know, this is just one way in which California is similar to this case. I mean, I think California is on all fours with this case. I mean, I think sort of the fundamental problem with the way plaintiffs have talked about the case is they're missing that the only possible source of the substantive rights that they're asserting here are the grant agreements themselves. It's not some other source of law. And I think that's the way that the cases, including this Court's decision in Califano, have talked about it. It's whether at essence, you know, the essence of the action is one that's contractual in nature. And I think that distinguishes this case from Bowen. Bowen was not a case that involved a contract at all. Instead, it was a case where a state brought an APA claim that was challenging the way that certain Medicaid reimbursements were calculated. And Bowen... So there were sort of two prongs that Bowen addressed of APA actions, both of which are not directly applicable here. The first was, you know, they said that that was a suit for something other than money damages and then said that a suit in the Court of Federal Claims was not an adequate alternate remedy. But here, we are talking about an entirely different and independent prong of the APA, of 702, which says that if there's another statute that expressly or impliedly precludes the relief that's sought, that that itself can be, you know, the thing that precludes APA review. And Bowen didn't address that at all. But why would that have been different in Bowen? Because at the end of the day, Bowen was about money. You know, that's what I'm struggling to understand in making sense of all the cases. Bowen was about money. It was about... There was a disallowance for reimbursements, and the state, Massachusetts, wanted the reimbursements. And so at the end of the day, it was about having the federal government pay money that the state thought it was owed. And Bowen says very clearly, if what you're bringing is, you know, a claim about agency action, just because you happen to, at the end of the day, receive money from the federal government doesn't make it a claim that can't be brought under the APA. So how is this any different? Because what the plaintiffs are arguing here is you've acted... The substance of their claim is not a contract claim. It's an APA claim that the agency has acted arbitrarily and capriciously. And it's true that if they win on that claim, they may get money moving forward. But that was true in Bowen as well, wasn't it? I mean, I think two points about Bowen. The first is that, again, it did not say anything at all about the expressly or impliedly forbidden limitation. It just didn't say anything. And I think the reason for that, and this is the second point, is that the Tucker Act very clearly covers contract claims, you know, express or implied contract claims, and Bowen did not involve contract claims at all. This was a state's, you know, APA claim about the Medicaid program. What part of the contract did they breach that caused you to rescind it? What is the contract claim? Tell me very neatly. What's the contract claim? The government rescinded the contract or, you know, disallowed the grant because the FIPP organization breached the contract and fill in the blank. So what the government says in its termination notice is that one of the bases for termination is when the particular grant agreement at issue is no longer effectuating agency priorities. That's a regulation, right? That's a regulation that's incorporated into these grant agreements expressly. Just so I understand, your argument is you can convert it. So if that was not incorporated into the contract and just was out there hanging out in the CFR, you could use it, but you agree that would be an APA claim if you used it in a way that was arbitrary and capricious. Your Honor, sometimes it's implicitly incorporated into the contract, even if not expressly. But here, because it's expressly in the contract, it's very clear that this is. Okay. All redounds to a question about what the contract allows or doesn't allow. Minus that little caveat, then your position is you can convert any regulatory sort of claim into a contract claim by just cut and pasting it into the agreement, making them sign it, and now everything has been converted from an APA claim into a Tucker Act claim? Your Honor, I mean, I don't think that's the right way to think about it. I mean, I think this is just one of the bases for termination of this grant agreement that the plaintiffs and the government had with each other and that the government is exercising its right under that grant agreement to terminate it because this is a valid basis on which to terminate it. And also had under the regulations even apart from the grant agreement. Your Honor, I mean, often these things are incorporated into them or these regulations in general are sort of about contracting and about government contracting, so that's the reason they're often incorporated. But I think when the government purports to exercise a right to terminate a contract, that's a question of what obligations the government has assumed under the contract. And as I mentioned, the only actual substantive, the only possible source of the substantive rights plaintiffs are asserting here are the agreements. They're not saying that there's some statute that requires the government to give the money to them. They say that the right to payment comes from the contracts themselves. And you can see that, too, from the relief that they're asking for. I mean, they're asking for the contracts to be put back into place so that they continue, can continue to be paid under them. Counsel, you have been using the word contract throughout your argument, but one of the things that the plaintiffs have said in their brief is that these actually aren't contracts. They're grants and aid, and that the statutory scheme distinguishes between contracts and grants and aid. Do you know if there's any case law that actually assesses that argument, what qualifies as a contract versus what qualifies as a grant and aid? Your Honor, I mean, I don't want to say that these are the exclusive cases, but there are some cases from the federal circuit that we've cited in our brief. One, I believe, is called Bowes or Boaz, and one is, I think, Columbus Regional Hospital. And those cases say that when a grant agreement looks just like a contractual arrangement where you're sort of trading promises back and forth to each other and there's consideration that those can be treated as contracts for purposes of the Tucker Act, that they become contractual in nature. And here, that's exactly what we have. I read that. I looked at that case, and I appreciate it. I guess what I'm trying to understand, then, is what would then just be a grant and not a contract? Can you just help us understand in terms of how the federal government normally engages with other parties? Because, again, some of the arguments have been that a government contract is really when the government is getting services for itself. So furniture, renovations, whatever it may be, and that this is different, these are grants made for the public, but don't – in other words, what grant wouldn't sort of be written down and have terms according to what you've just represented that case says? It's such a broad rule that I'm trying to understand what wouldn't qualify as a contract. Your Honor, I don't want to sort of get out ahead of what – I don't know sort of what the full universe of grants look like to sort of try to suss out which ones fall on which side of the line. I think the reason that these ones very clearly fall on the side of the line of contracts is if you look at them, they spell out all kinds of things about you're going to perform this at this time and get payment at this time. It's a very clear exchange of promises that the government will pay if you fulfill your end of the bargain. And it includes a list of the performance of work to be done, the timing for it. It also talks about the basis for terminating the grant agreement. It sort of includes kind of these trades back and forth that look sort of like any traditional contract. So maybe a block grant to a state wouldn't qualify, but you're saying pretty much anything else that's written down that looks even close to a contract is a contract. Your Honor, it may be that a lot of these, that some substantial number are going to qualify as contracts for purposes of the Tucker Act. I don't want to sort of take a position on which ones do and which ones don't. Let me just ask you one other question that sounds like Judge Elliott. So it seems to be what you're arguing is that if there's anything that in any way, shape, or form is related to a contract, even if the claim that's made is a statutory claim or a constitutional claim, it has to go to the Court of Federal Claims. So just to give you one hypothetical. So say an agency said that every grant that we're going to cancel every grant going forward based on the race of the original applicant for the grant, that's how we're going to categorize which grants get canceled and which are allowed to continue. The original grant applicants, assuming they still have the grant, then want to bring a claim under the Equal Protection Clause saying that this is racial discrimination, intentional racial discrimination that violates the Equal Protection Clause. Are you saying that claim would also have to go under the Tucker Act to the Court of Federal Claims? Even if constitutional claims are treated differently, I mean, we don't have that here. I think the critical point, it's not that every time there's a contract involved, it goes to the Court of Federal Claims. I think the critical point here is that the substantive rights that the plaintiffs are asserting, the reason that they think that they get payment. But why would it matter if it's a constitutional claim versus a statutory EPA claim? Why would it matter? If it's all about whether it's a contract or not a contract under your impliedly or explicit clause that you say wasn't considered in Bowen, then it shouldn't matter what the claim is, should it? Why analytically would it matter what the claim is? I think what the question that these cases are getting at is in essence what is the nature of the action that the plaintiff is bringing. And here the essence of what the plaintiff is bringing is that these plaintiffs want to get paid. Why would that be the essence in the hypothetical that I posed to you? So you have a grant that's been canceled because of your race and you want the grant to be reinstated. The claim that you're bringing, say you bring an APA claim because you think this is arbitrary and capricious in addition to your intentional equal protection claim under the 14th Amendment, but your goal is to get your grant reinstated. So why under your understanding of Bowen, et cetera, and Section 702, why would that case have to go to the Court of Federal Claims? I think it's going to depend on specifically the nature of the claim and exactly the cause of action. I told you the nature of the claim. I mean, I guess it depends if what they're saying is something, for example, you could imagine that they might have a statute that says give money to this particular person and they're trying to enforce, even if that is done through a grant agreement, it may be that they're saying we're enforcing the statute itself that says give money to me. Here the plaintiffs don't have that other source of authority. The only thing that they have that in their view allows them to say these payments are the grant agreements, and so that turns into a question of whether the government has reached a contract. Let me just try this one other time. This is a person, I'm not talking about any statute, this is a person who just got a grant through the regular grant process, applied, was selected, and then the agency puts into place a rule that they're going to cancel all grants that fall into a category based on the race of the grant applicant. The person wants the grant and they bring a federal case and they bring federal statutory EPA claims and an intentional equal protection discrimination claim under the 14th Amendment. So those are the claims, but really what they want is the grant reinstated. Does that go to the Court of Federal Claims or not? Your Honor, I don't want to sort of, you know, it depends on the very specifics of exactly what is going on and the nature of the claim, and I don't want to, like, I don't think that this court in this case needs to reach those issues because here the only thing that plaintiffs have identified are the contracts themselves. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellants please reintroduce herself on the record? She has a four-minute rebuttal. Good morning. Again, Lila Miller for the Plaintiffs' Appellants. I'd like to pick up where Your Honors just left off with the government. The fact that a grant agreement may be the sort of but-for cause of the parties' relationship does not mean that all claims are contract claims. And so, again, we would remind the Court of how the D.C. Circuit articulated the essence of the claim analysis in Megapulse and then again more recently in 2022 in Crowley where they were talking about where the duty derives from. And here the substantive right is the right to be free from agency action that is arbitrary and capricious and contrary to law. I have two other quick points on this jurisdictional issue and then I want to briefly address the mootness arguments. The first is that the government makes a lot of the fact that Bowen was not a contract case and they say the grant agreements here are functionally contracts. But the Medicaid program that was at issue in Bowen has repeatedly been described by the Supreme Court as a federal state contract both before Bowen and since then. So if we are going to take the government's functional analysis position for whether a contract exists, then that distinction between Bowen and this case disappears. But there isn't actually a contract between the states. Is there actually a document that would be a contract under the Medicaid program? There's not a written agreement in the same way, but there is sort of this specific payment plan and infrastructure and the Supreme Court has a... That's all statutory, isn't it? Or statutory and regulatory? Am I wrong in my understanding of how Medicaid works? I don't think it's contractual. I think it's statutory and regulatory. It is, Your Honor, and the Supreme Court has said that that statute under the spending clause is analyzed as a contract, that it is a CAN. And they've said that in a couple of different cases. The second... The last thing I'd say in jurisdiction is that the articulation of the Tucker Act line that the Supreme Court laid out recently in Maine Community Health Options is, I think, quite useful for this case. So there, in 2020, eight justices joined an opinion articulating Bowen as about prospective non-monetary relief to clarify future obligations and the Tucker Act as about specific sums already calculated past due and designed to compensate for completed labors. And plaintiff's claims just simply do not fall into the second category. Turning briefly to mootness, the government's arguments on mootness seem predicated on the idea that any relief here would necessarily reinstate the temporary restraining order which had expired. But that's not the case. This court could vacate the jurisdictional holding and remand for further proceedings, and that would not automatically reinstate the TRO or the status quo as it existed. I'll follow that. So we write our opinion, we get to the end. We therefore conclude that the district court mistakenly viewed this case as governed by California 1, period. We therefore blank. Remand for further proceedings consistent with this opinion. And why, if we said this is moot, are you not in the exact same position? You go back, it's moot, okay. What's moot is this TRO. You have kept this case alive. You go back to the judge. You have all your new building blocks to build your argument. You go before Judge Stearns, and you say, here's the world of the law now. I know what you did back when you did it, but the world has changed, and here's why we win. And there you are. Yes, Your Honor. Sitting here today, we do have more arguments to make than we did when we initiated this appeal. And as Judge Rickleman noted, that can happen over the course of cases. But when this appeal was filed, and even if we were to return to the district court and it was unwilling to reevaluate its decision, whether it's under the law of the case doctrine or for another reason, Rule 12H says that if a district court at any time finds jurisdiction lacking, it should dismiss the matter. But it hasn't dismissed the matter. And it didn't dismiss the matter. That's correct, Your Honor. But under the standard laid out in Carson for appeals, for interlocutory appeals, we would argue that it was nevertheless an appealable order. You'd agree that the Carson doctrine is different than the mootness issue? Yes, we would. Carson's only whether the order itself was appealable. It doesn't address the issue of whether the issue is moot. It does not. I think the test has been articulated a little bit differently. So in the context of expired orders, appeals from expired orders, and, again, plaintiffs dispute that the dissolution order has expired. But in that context, the court looks at whether it continues to have an effect on ongoing legal rights and obligations. That's the term that the Supreme Court has used for analyzing. In that case, it was an appeal for a TRO that was in place for 10 days, and the appeal was heard over a year later. And we would argue that the dissolution order continues to have an effect on plaintiffs' ongoing legal rights. If you could just explain to me, once again, the difference between this court dismissing this as moot and writing an order in your favor, if it were to do that, is what? As a practical matter. If this court were to write an opinion in our favor, saying that the jurisdictional analysis was incorrect, then the immediate next step would be for plaintiffs to evaluate whether, at that moment in time, preliminary relief were necessary and appropriate or whether perhaps a motion for a declaratory relief would be appropriate based on the changed circumstances. Is it not? Because it doesn't afford you any relief. I think it does afford us relief from the dissolution order, because if this court instead dismissed the case as moot, we would first then have to go back to the district court and make our case for why it should correct its jurisdictional analysis, whether it's based on the changed law or further facts. But you just said you'd have to evaluate whether you were going to ask for anything, which suggests that the First Circuit's opinion would be advisory. I want to clarify that a little bit. In terms of the evaluation, I think it goes to the fact that the government is currently administering the grants, and as counsel mentioned today, they have not argued that the claims are moot. So we do acknowledge that the current administration of the grant means that plaintiffs may not be entitled on remand to preliminary relief, but we would argue that we're entitled to declaratory relief and that if this court were to say the jurisdictional analysis was incorrect, we could return to the district court and seek that declaratory relief. Just so I understand it, we should not be ordering the temporary restraining order to be reinstated. That's correct, Your Honor. My position is May 16th was the end period for which the temporary restraining order could be in place. That's correct, Your Honor, and that the factual circumstances have changed. Thank you, counsel. Thank you, counsel. That concludes argument.